THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV F 05-0331 |
| Plaintiff, | ) ) | ORDER RE: SUMMARY JUDGMENT |
| v. | ) ) | |
| DOLORES J. KELLEY, | ) ) | |
| Defendant. | ) ) | |

Plaintiff United States of America has filed a motion for summary judgment. Defendant Kelley has not filed any opposition.

**I. History**

Over the course of 1982 to 1985, Defendant Dolores J. Kelley received four loans totaling $19,961 to pay for her education in chiropractic practice at the Cleveland Chiropractic College. The loans were guaranteed by the federal government under the Department of Health and Human Services's Health Education Assistance Loans Program ("HEAL"). The loans were initially issued by private lenders, but the Student Loan Marketing Association ("Sallie Mae") purchased the loans from the issuers. Sallie Mae gave Defendant a repayment schedule which required her to begin payments on June 1, 1988. Defendant made 18 payments totaling $7,026.27 from May 23, 1991 through October 7, 1992 after which she ceased payment. On

March 28, 1993, Sallie Mae sent Defendant a demand for payment to which she did not answer. Plaintiff United States of America then paid Sallie Mae the balance of the loans ($17,718) and received an assignment of the claims on February 4, 1994.

On June 16, 1993, Defendant filed for bankruptcy under Chapter 13 in the Eastern District of California (Case No. 93-92444). Judicial notice is taken of the fact that the bankruptcy case was closed on October 30, 1998, and there is no indication the loans or any portion of them were discharged. During this time, Defendant made 30 payments totaling $4,061.57. The last payment received was on June 15, 1998. Since that time, Plaintiff has written Defendant multiple times concerning the unpaid balance of the loans.

On March 9, 2005, Plaintiff filed this action against Defendant to collect payment on the loans. Defendant filed an answer on March 30, 2005. On June 17, 2005, Plaintiff filed this motion for summary judgment, noticed for hearing on July 25, 2005. As of June 14, 2005, the balance of the debt totaled $32,077.93, with interest accruing at 5.625% per annum ($4.89 per day). Plaintiff seeks that amount, plus interest accrued to date of judgment, court costs, and post-judgment interest. Defendant failed to file an opposition. The motion was taken under submission by an order issued on July 21, 2005.

## II. Legal Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. Proc. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

3

1 suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
2 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
3 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
4 the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d
5 1433, 1436 (9th Cir. 1987).

6      In the endeavor to establish the existence of a factual dispute, the opposing party need not
7 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
8 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
9 trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose
10 of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether
11 there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)
12 advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin
13 Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

14      In resolving the summary judgment motion, the court examines the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th
17 Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and
18 all reasonable inferences that may be drawn from the facts placed before the court must be drawn
19 in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,
20 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208
21 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing
22 party's obligation to produce a factual predicate from which the inference may be drawn.
23 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

24      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
25 show that there is some metaphysical doubt as to the material facts....Where the record taken as a
26 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
27
28                                                                4

issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

### III. Statements of Material Facts

1. On or about January 17, 1983, Kelley, for value received, executed and delivered a promissory note in the principal amount of $3,100, plus variable interest.

2. On or about September 5, 1984, Kelley, for value received, executed and delivered a promissory note in the principal amount of $6,000, plus variable interest.

3. On or about March 28, 1985, Kelley, for value received, executed and delivered a promissory not in the principal amount of $6,000, plus variable interest.

4. On or about December 16, 1985, Kelley, for value received, executed and delivered a promissory not in the principal amount of $4,861, plus variable interest.

5. All of the promissory notes executed by Kelley were made by a private lender and were guaranteed by HHS under the Health Education Assistance Loan Program, Section 701-720 of the Public Health Service Act, 42 U.S.C. §292f-p.

6. Kelley was the recipient of a total of four HEAL loans, totaling $19,961.00 during the years 1982 through 1985, while attending Cleveland Chiropractic college in Los Angeles, California.

7. Pursuant to the terms of the promissory notes Kelley executed, Kelley was required to begin repayment at a variable rate of interest beginning the first day of the tenth month after Kelley ceased to be a full-time student or had completed a residency program.

8. On or before May 1, 1986, Kelley ceased carrying the required academic workload as required under the terms of the HEAL loan.

9. The Student Loan Marketing Association ("SLMA") purchased Kelley's notes and received an assignment from the private lender.  SLMA furnished Kelley with a repayment schedule.

10. Kelley was granted a forbearance agreement for the period of March 1, 1987 to February 29, 1988, with payment of the notes and variable rates of interest to begin June 1, 1988.

11. Between May 23, 1991 and October 7, 1992, Kelley made eighteen payments totaling $7,026.27.

12. After receiving no payment since October 7, 1992, on or about March 28, 1993, SLMA sent Kelley a final demand for payment in full, to which Kelley did not respond.

13. On or about June 16, 1993, Kelley filed for relief under Title 11 U.S.C. Chapter 13, in the United States Bankruptcy court, Eastern District of California (Case No. 93-92444), but HEAL loans are not dischargeable under bankruptcy.

14. On or about June 30, 1993, SLMA filed an insurance claim with HHS; SLMA was paid $17,718.00 on February 4, 1994, and the United States received an assignment of the notes.

15. Kelley is considered to have been in default on her HEAL loans as of February 4, 1994.

16. On or about February 14, 1994, Kelley was notified by HHS that the promissory notes were assigned to the United States.

17. Kelley made thirty payments between May 3, 1994 and June 15, 1998, totaling $4,061.57.

18. On or about June 21, 2000 and December 12, 2001, letters of notification were sent to Kelley by HHS advising her she had sixty days in which to resolve the delingquent debt or establish a repayment agreement; otherwise, the debt would be referred to the U.S. Department of Justice ("DOJ") for enforced collection.

19. On or about April 1, 2002, Kelley was notified by HHS that the debt would be referred to DOJ if she failed to either remit payment in full or enter into a repayment agreement.

20. On or about July 10, 2003, Kelley was sent another letter by HHS advising her she had sixty days in which to resolve the delinquent debt or establish a repayment agreement; otherwise, the debt would be referred to the DOJ for enforced collection.  Kelley did not respond, and on or about September 16, 2003, the debt was referred to the DOJ for enforced collection.

21. HHS payment records reflect that Kelley has paid a total of $11,087.84 on these loans.

22. The last payment received from Kelley was on or about June 15, 1998.

23. As of June 14, 2005, Kelley owes $32,077.93 in principal on her HEAL loans, together with accruing interest and costs.

24. On March 9, 2005, plaintiff filed the instant action seeking judgment against Kelley for the principal; accrued interest; late charges and penalties; administrative collection costs; attorneys' fees; court costs, U.S. Marshal's fees and docket fees; and post-judgment interest on all amounts awarded.

7

## IV. Discussion

Defendant has not filed any opposition to this motion for summary judgment. The court has reviewed the documents provided by Plaintiff establishing the amount of the debt outstanding. Plaintiff has provided copies of the original loan applications as well as an account statement of payments and accruing interest since February 4, 1994. See Doc. 1, Complaint, Exs. A and C. The documentation shows that Defendant owed $31,594.95 as of March 4, 2005. Plaintiff has also provided the declaration of a Supervisory Accountant of the Department of Health And Human Services who states that review of the files shows Defendant owed $32,077.93 as of June 14, 2005. Doc. 8, Blum Declaration, at 4:2-5.

In her answer, Defendant substantively claimed she "is retired, subsisting entirely on social security retirement and supplemental security income for indigent and low income persons. Her total income is $836 per month, all of which is necessary for basic and minimal living expenses. Under the regulations of the federal agency handling the loans in issue, the defendant is not obligated to make payments." Doc. 4, Answer, at 2:1-6. Defendant has provided no citation to any specific federal regulations that explains why she is not obligated to make payments. Even assuming that Defendant is correct concerning the relevant regulations, she has not substantiated her income level. Plaintiff has provided the declaration of Assistant U.S. Attorney Montoya who states her office sent an interrogatory and request for production of documents regarding Defendant's financial status on April 5, 2002 but had received no reply as of June 17, 2005. See Doc. 9, Montoya Declaration.

As Plaintiff has provided evidence of the debt and Defendant has provided no opposition, summary judgment in favor of Plaintiff is warranted.

## V. Conclusion

Plaintiff's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

**Dated:     October 25, 2005**                              **/s/ Anthony W. Ishii**
h7ehd6                                                    UNITED STATES DISTRICT JUDGE

9